UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN SMUKALA,                                  Case No. 15-10612

          Plaintiff,                            Steven J. Murphy, III
v.                                               United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                 Stephanie Dawkins Davis
                                                 United States Magistrate Judge
          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 16)**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On February 18, 2015, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Steven J. Murphy referred this matter to Magistrate Judge Michael Hluchaniuk for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for benefits. (Dkt. 3). This matter was reassigned to the undersigned Magistrate Judge on January 5, 2016, pursuant to administrative order. (*See* Text-Only Order dated January 5, 2016). This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 13, 16).

B.    Administrative Proceedings

Plaintiff filed the instant claims for period of disability and disability insurance benefits on January 12, 2012, alleging disability beginning September 26, 2007. (Dkt. 11-2, Pg ID 65). At the hearing, plaintiff amended the alleged onset date to July 16, 2011. (Dkt. 11-2, Pg ID 92). Plaintiff's claim was initially disapproved by the Commissioner on March 27, 2012. (Dkt. 11-2, Pg ID 65). Plaintiff requested a hearing and on August 7, 2013, plaintiff appeared, along with her attorney, before Administrative Law Judge (ALJ) David F. Neumann, who considered the case de novo. (Dkt. 11-3, Pg ID 83-112). In a decision dated September 19, 2013, the ALJ found that plaintiff was not disabled. (Dkt. 11-2, Pg ID 65-44). Plaintiff requested a review of this decision on November 18, 2013. (Dkt. 11-2, Pg ID 61). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council on January 2, 2015, denied plaintiff's request for review. (Dkt. 11-2, Pg ID 33-40); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

-----

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under Sentence Four.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1966 and was 44 years old on the amended alleged onset date.  (Dkt. 11-2, Pg ID 67).  Plaintiff's last date insured was December 31, 2012.  (Dkt. 11-2, Pg ID 66).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date through the last date insured. (Dkt. 11-2, Pg ID 68).  At step two, the ALJ found that plaintiff's narrowing of the left knee joint space with osteopathic changes, degenerative joint disease of both hips, status post fracture of the left tibia and tibial plateau, disc space narrowing of the lumbosacral spine and obesity were "severe" within the meaning of the second sequential step.  *Id.*  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id*.  The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform sedentary work as follows:

3

requires work which is simple, routine repetitive work at an SVP of 1 or 2;

can only lift or carry 10 pounds;

requires a sit/stand option while remaining at the workstation (option means that the individual can sit/stand "at will" while performing his assigned duties);

can stand and/or walk (with normal breaks) for a total of two hours in an eight-hour workday;

can sit (with normal breaks) for a total of six hours in an eight-hour workday;

can perform pushing and pulling motions with his upper and lower extremities within the aforementioned weight restrictions, but no operation of foot controls with the left lower extremity;

should avoid unprotected heights and moving machinery; needs to avoid exposure to frequent vibrations;

should be restricted to a "relatively clean" work environment (no extreme wetness/humidity and stable temperatures);

can perform each of the following postural activities occasionally: climbing (ramps and stairs), balancing, stooping, and crouching;

cannot perform kneeling or crawling;

should avoid climbing ladders, ropes, and scaffolds;

limited to jobs which can be performed while using a hand-held assistive device required only for uneven terrain or prolonged ambulation; and will be off task not more than 10% of the workday.

(Dkt. 11-2, Pg ID 68-69).  At step four, the ALJ concluded that plaintiff could not

perform his past relevant work as a truck driver and fast food worker.  (Dkt. 11-2,

Pg ID 75-76).   At step five, the ALJ denied plaintiff benefits because plaintiff

could perform a significant number of jobs available in the national economy.

(Dkt. 11-2, Pg ID 76).

     B.   <u>Plaintiff's Claims of Error</u>

Plaintiff's first claim of error is that the ALJ failed to conduct a sufficient

analysis as to whether plaintiff met Listing 1.04A.  According to plaintiff, in place

of an actual evaluation of the evidence under the criteria of Listing 1.04A, the ALJ

merely stated a negation of those criteria, while misstating and minimizing

plaintiff's actual diagnosis and medical findings:  "The disc space narrowing of the

lumbosacral spine does not meet or medically equal listing 1.04 because the

claimant lacks the requisite motor and sensory deficits and there is no evidence of

spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication."

(Dkt. 11-2, Pg ID 68).

Plaintiff contends the actual evidence establishes all of the criteria of that

Listing.  Plaintiff explains that the ALJ's reference to a finding of "disc space

narrowing," which did not specify a level or any additional findings, appears to

refer to a lumbar spine x-ray on January 10, 2012.  (Dkt. 11-7, Pg ID 386-387).

That x-ray also showed the prior spinal fusion from the L4 to the S1 level, but gave

no findings regarding any other disk level.  Neurosurgeon Gerald Schell, M.D.,
reported on August 8, 2012, that the prior lumbar spine fusion in 2001 had resulted
in a "good fusion," but that back pain worsened after a motor vehicle accident in
2007, and plaintiff had also developed neck and right shoulder pain with arm pain
and numbness.  (Dkt. 11-7, Pg ID 434).  Examination showed limitation of lumbar
spine motion, which Dr. Schell described as "mild."  Plaintiff contends that nothing
in the Listing requires any particular degree of limitation of motion.  Dr. Schell also
found decreased motion in the neck with associated spasm, weakness of grip, "C6
sensory changes an absent biceps reflex and perhaps mild atrophy of his biceps
muscle on the right side."  (Dkt. 11-7, Pg ID 434).  Again, plaintiff asserts that
nothing in the Listing specifies any particular degree, mild, moderate, or severe, of
muscle weakness, sensory or reflex loss.  Dr. Schell suspected cervical
radiculopathy as well as aggravation of the lower spine condition.  Subsequent
MRI on August 29, 2012, showed "a large posterior herniated disc with extrusion
in the midline approximately 7 mm and with elements of both superior and inferior
extrusion. There is marked mass effect upon the thecal sac and significant spinal
canal stenosis."  (Dkt. 11-7, Pg ID 436).  The MRI also showed the previously
mentioned postsurgical changes.

   At a follow-up examination on September 17, 2012, Dr. Schell referred to
the MRI findings of "severe mass effect and marked stenosis," as well as his own

examination showing "a lot of pain, numbness, and paresthesias in his lower extremities," and that plaintiff "walk[ed] with a severe antalgic gait" and had "positive straight leg raising." (Dkt. 11-7, Pg ID 433). Dr. Schell recommended further surgery. According to plaintiff, the ALJ's version of this examination conveniently omitted the critical neurological findings establishing the severity of plaintiff's condition as meeting Listing 1.04A. (Dkt. 11-7, Pg ID 72). This evidence shows that the ALJ's entirely conclusory "rationale" under this Listing was not just unsupported by substantial evidence but directly contrary to that evidence. According to plaintiff, rather than the supposed absence of "the requisite motor and sensory deficits," Dr. Schell's two examinations, confirmed by MRI of the lumbar spine showing "severe mass effect and marked stenosis," demonstrated that all of the criteria of Listing 1.04A were present in both the lumbar and the cervical spine.

Second, plaintiff contends that the ALJ's credibility analysis was improper. Plaintiff has been treated over a number of years for his severe impairments, though his access to treatment through the date of the final decision has been substantially limited by lack of financial means and insurance coverage. At the hearing on the current application on August 7, 2013, counsel asked him about Dr. Schell's recommendation for further lumbar spine surgery in September 2012. (Dkt. 11-2, Pg ID 97). Plaintiff testified that he had not yet had that surgery

because he could not afford it, and had no insurance to cover the surgery. Plaintiff also testified that he had been unable to have surgery recommended to remove hardware from his left knee for the same reason. (Dkt. 11-2, Pg ID 101). Plaintiff points out that this was explicitly noted by Dr. McManaman, the orthopedic surgeon who examined him on May 23, 2012, and recommended that surgery. (Dkt. 11-7, Pg ID 486).

Plaintiff contends that, instead of considering plaintiff's testimony about his lack of insurance and financial means to obtain treatment, as explicitly confirmed by Dr. McManaman, the ALJ repeatedly chose to impugn his credibility. He twice stated that lack of treatment, "reflects poorly upon the claimant's veracity in this matter." (Dkt. 11-2, Pg ID 71, 73). He later claimed that the absence of worsening of plaintiff's impairments since the prior ALJ decision was demonstrated by the fact that he "declined surgical intervention for his back disorder as recommended by Dr. Schell," and that he "did not proceed with left knee hardware removal pursuant to Dr McManaman's recommendation." (Dkt. 11-2, Pg ID 75). According to plaintiff, the ALJ cited no evidence that plaintiff could have secured the recommended surgeries, further demonstrating that his rationale has no basis in law or fact.

As further evidence of the lack of support for the ALJ's decision, plaintiff points out that the ALJ relied on the "general rule" that "an impairment that can be

remedied by treatment with reasonable effort and safety cannot support a finding of disability." *Id*. Again, plaintiff insists that nothing in the medical evidence suggests that the extensive repeat spinal and knee surgeries recommended by the doctors are either safe or could have been done with reasonable effort. Rather, plaintiff asserts that the ALJ chose to rely entirely on his own conjecture and medical expertise to impugn plaintiff's credibility.

Next, plaintiff argues that the ALJ's decision to adopt the prior RFC based on *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and Acquiescence Ruling 98-4(6) is flawed. Plaintiff points out that, at the time of the July 2011 decision, the prior ALJ had no evidence from any neurosurgeon, as Dr. Schell's examinations did not take place until over a year later. The prior ALJ also could not have considered the effects of the "severe mass effect and marked stenosis" from disk herniation at L3-L4, which is above the level of the prior fusions from L4 to S1, as that MRI also was not done until a year later. Similarly, the prior ALJ did not have the benefit of any orthopedic evaluation of plaintiff's left knee impairment, and could not have known of Dr. McManaman findings, which lead him to recommend surgery for removal of hardware from the left knee. Dr. McManaman additionally observed that plaintiff had diminished range of motion and pain in the hips, resulting in a diagnosis of moderate degenerative changes of bilateral hips. These findings were not present in the previous case, and

9

still further demonstrate worsening of plaintiffs condition since the first ALJ decision.

Plaintiff also points to the limitations caused by his obesity as a further reason to conclude that his condition worsened since the July 2011 decision. According to plaintiff, the prior ALJ gave no consideration to obesity whatsoever, much less cite the controlling authority of SSR 02-1 p. The current ALJ at least purported to consider the effect of what he admitted to be "extreme obesity" as it further limited plaintiff's functional capacity in combination with his other orthopedic and neurological impairments. (Dkt. 11-2, Pg ID 74-75). According to plaintiff, all of these findings show that plaintiff's condition became considerably worse through the last date insured of December 31, 2012, than it was at the time of the prior ALJ's decision in July 2011 and thus, the ALJ's *Drummond* analysis was in error.

In the alternative, plaintiff also asks that the decision be vacated and the case remanded for a new hearing under Sentence 6. Plaintiff's brief to the Appeals Council included new and material evidence regarding further examination, testing, and surgery performed for his impairments. (Dkt. 11-2, Pg ID 42-52). Noting the same findings as in the August 2012 MRI, Dr. Schell stated on October 18, 2013, that plaintiff "has significant problems with lumbar stenosis" resulting from a "significant amount of compressive effect in the region of his lumbar spine." (Dkt.

10

11-2, Pg ID 51).  On December 2, 2013, Dr. Schell reported neurological findings

of "decreased sexual function and, at times, loss of bladder control."  (Dkt. 11-2,

Pg ID 47).  Dr. Schell referred to a new MRI in January 2014.  (Dkt. 11-2, Pg ID

45).  The findings appear to be the same as in the prior MRI.  Plaintiff was finally

able to arrange surgery later that month.  (Dkt. 11-2, Pg ID 43).  In addition to

removing the herniated disk, Dr. Schell performed fusion at L3-4 and revised the

fusion rods from L3 to S1.  According to plaintiff, considering that the ALJ did not

even take into consideration the MRI available to him showing "severe mass effect

and marked stenosis" in reaching his conclusion, this new evidence, is clearly

material to plaintiff's condition at that time because it demonstrates the presence of

much more severe impairment than previously considered.  At the same time, it is

fully consistent with the evidence in the record, showing the severity of plaintiff's

impairments at that time.  It is also undoubtedly "new" as it was not yet available at

the time of ALJ Neumann's decision.  Accordingly, and in the alternative to the

argument for remand under Sentence Four, plaintiff asks the court to order a new

hearing to consider the new and material evidence now available.

     C.    The Commissioner's Motion for Summary Judgment

     According to the Commissioner, plaintiff failed to establish that his

impairments met or equaled listing 1.04A, as it was his burden to do.  *See Sullivan*

*v. Zebley*, 493 U.S. 521, 525 (1990) ("For a claimant to show that his impairment

matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify."). Listing 1.04A requires, in addition to other elements, motor loss (atrophy with associated muscle weakness); sensory or reflex loss; and if there is involvement of the lower back, positive straight leg raising testing in both the sitting and supine positions. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A.

The Commissioner maintains that the evidence from the period at issue fails to demonstrate that plaintiff had motor loss (atrophy with associated muscle weakness), sensory or reflex loss, or a positive straight leg raising test in both the sitting and supine positions. (Dkt. 11-7, Pg ID 380-396, 418-430, 433-437, 485-494, 497-519). There are no notations of motor loss, and the only mention of atrophy appears to be mild atrophy in plaintiff's right biceps muscle. (Dkt. 11-7, Pg ID 434). The Commissioner asserts, however, that there is no indication that any atrophy in plaintiff's right biceps muscle would be related to his lumbar spinal impairment (Dkt. 11-7, Pg ID 387; Dkt. 11-2, Pg ID 72) and there did not appear to be any associated muscle weakness in his right biceps muscle. (Dkt. 11-7, Pg ID 434). The only notation of some weakness was in his grip. *Id*. While plaintiff complained of pain, numbness, and paresthesias in his legs (*id.* at 435), the Commissioner points out that there were no neurological deficits in his legs, he had

12

no significant weakness in his legs, and the only objective notation regarding

sensation appears to be C6 sensory changes. *Id*. at 434, 485. In the view of the

Commissioner, this does not evidence sensory loss, as required by the listing. And,

the only notation of reflex loss appears to be in Plaintiff's biceps, but again, there is

no indication that a problem in plaintiff's biceps muscle would be related to his

lumbar spinal impairment and there does not appear to be associated motor loss or

weakness in that area in any event. *Id*. at 434. Lastly, as plaintiff's spinal

impairment involves his lower back (*id.* at 387, 433), the listing requires positive

straight leg raising in both the sitting and supine positions. 20 C.F.R. Part 404,

Subpart P, Appendix 1, § 1.04A. According to the Commissioner, there is a

notation of positive straight leg raising, but there is no indication that this result

was obtained in both the sitting and supine positions. *Id*. at 433. Thus, the

Commissioner maintains that plaintiff has failed to satisfy his burden of proving

that he satisfied all of the required elements of Listing 1.04A.

Next, the Commissioner asserts that the ALJ properly evaluated plaintiff's

subjective complaints. More specifically, the ALJ found that plaintiff's medically

determinable impairments could reasonably be expected to cause the alleged

symptoms; however, plaintiff's statements concerning the intensity, persistence,

and limiting effects of those symptoms were not entirely credible. (Dkt. 11-2, Pg

ID 75). In making that finding, the ALJ considered plaintiff's testimony about his

13

symptoms, including their location and intensity; his alleged limitations; his

medications, including efficacy and side effects; his treatment history; and daily

activities (Dkt. 11-2, Pg ID 70-75), in compliance with the regulations.  Contrary to

plaintiff's assertion, the Commissioner maintains that the ALJ considered

plaintiff's allegation that he was unable to afford treatment.  *Id*. at 70, 75.  Further,

the ALJ did not err in stating that "[u]nless the claimant simply has no way to

afford or obtain treatment or remedy a condition, [an ALJ] may consider the

claimant's failure to seek treatment for a period of time as a factor to be considered

against the claimant." *Id*. at 75.  The Commissioner points out that this Court has

said the very same thing. *See Brown v. Comm'r of Soc. Sec*., 2011 WL 6000597, at

*11 (E.D. Mich. Aug. 26, 2011).  It is also true that an impairment that can be

remedied by treatment with reasonable effort and safety is not disabling. *See e.g.*,

*Dunlap v. Comm'r of Soc. Sec*., 2008 WL 360673, at *4 (W.D. Mich. Feb. 7, 2008).

Thus, the Commissioner asserts that the ALJ did not err by citing those rules of

law.  Given plaintiff's ability to obtain treatment before, during, and after the

period at issue here, the ALJ could properly consider gaps in plaintiff's treatment,

as well as plaintiff's failure to undergo surgery, in assessing credibility.  (Dkt. 11-2,

Pg ID 71, 73, 75). *See Blacha v. Sec'y of Health & Human Servs*., 927 F.2d 228,

231 (6th Cir. 1990) (failure to seek treatment for spine impairment reason to find

claimant not credible).  Accordingly, the Commissioner asserts that plaintiff's

credibility challenge must fail.

The Commissioner also maintains that the ALJ did not err in his analysis under *Drummond* and AR 98-4(6). According to the Commissioner, the medical evidence supports the ALJ's determination that plaintiff retained the RFC for a fairly limited range of sedentary work. (Dkt. 11-2, Pg ID 68-69). Further support includes examination notes from the period under review reflecting only tenderness in his lower back and left knee. (Dkt. 11-7, Pg ID 493, 498, 500). In addition, in a function report dated February 27, 2012, plaintiff stated that he could sit and stand for up to one hour and that he was only unable to lift heavy or bulky items. (Dkt. 11-6, Pg ID 238-239, 243). Plaintiff said he had no problems with self-care, could prepare simple meals, fold laundry, and do some yard work with help and breaks. *Id.* at 240. He could drive, shop using an electric cart, and manage his finances. *Id*. at 241. He liked to read, watch television, and socialize. *Id.* at 242. Plaintiff's ability to perform such activities lends support to the ALJ's RFC determination. *See Blacha*, 927 F.2d at 231 ("As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain.").

The Commissioner also argues that, as for obesity, which the ALJ explicitly considered (Dkt. 11-2, Pg ID 74-75), plaintiff has failed to show that it resulted in any greater limitations than found by the ALJ. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("As an initial matter, we note that the burden of

proof lies with the claimant at steps one through four of the process ….").

Therefore, the Commissioner contends that plaintiff's argument on this point fails.

Lastly, the Commissioner maintains that plaintiff has failed to satisfy the requirements for a sentence six remand.  Section 405(g) of chapter 42 of the United States Code provides that the court may at any time "order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding...."  *See King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 206 (6th Cir. 1990).  According to the Commissioner, plaintiff has failed to show that the evidence is material.  *See Foster v. Halter*, 279 F.3d 348, 358 (6th Cir. 2001) (no remand because plaintiff "has not established that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with this evidence.").  The evidence submitted to the Appeals Council post-dates plaintiff's date last insured by approximately one year.  (Dkt. 11-2, Pg ID 41-52).  Therefore, the Commissioner contends that the evidence is not relevant to the time period under review and not material.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("The rest of the material contained in the additional evidence pertains to a time outside the scope of our inquiry.").  Therefore, the Commissioner urges the Court to reject plaintiff's request for a Sentence Six

remand.

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case

17

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the

record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

19

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a
continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in
substantial gainful activity, benefits are denied without
further analysis.

Step Two:  If the claimant does not have a severe
impairment or combination of impairments, that
"significantly limits ... physical or mental ability to do
basic work activities," benefits are denied without further
analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his or
her past relevant work, if other work exists in the national
economy that plaintiff can perform, in view of his or her
age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

21

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

1.    *Drummond*/Credibility

22

Generally, principles of *res judicata* require that the administration be bound by a prior decision unless a change of circumstances is proven on a subsequent application. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). In *Drummond*, the Sixth Circuit held that Social Security claimants and the Commissioner are barred from re-litigating issues that have previously been determined at the administrative level. *Drummond*, 126 F.3d at 842; *see also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such hearing."). *Drummond* mandates that absent evidence that a claimant's condition has improved, findings issued by an ALJ as part of a prior disability determination are binding on an ALJ in a subsequent proceeding. *Drummond*, 126 F.3d at 841. The Commissioner bears the burden to prove changed circumstances so as to escape being bound by the principles of *res judicata*. *Id*. at 842-43 ("We reject the Commissioner's contention that the Social Security Administration has unfettered discretion to reexamine issues previously determined absent new and additional evidence ....  Just as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner."). Acquiescence Ruling 98-4(6), issued post-*Drummond*, instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled

23

with respect to the unadjudicated period unless there is new and material evidence

relating to such a finding ... ."  The Sixth Circuit applies collateral estoppel to

"preclude reconsideration by a subsequent ALJ of factual findings that have

already been decided by a prior ALJ when there are no changed circumstances

requiring review."  *Brewster v. Barnhart*, 145 Fed.Appx. 542, 546 (6th Cir. 2005).

In this case, the ALJ combined his *Drummond* analysis with part of his

credibility analysis:

> The undersigned finds the claimant to be less than fully
> credible, with the allegations regarding limitations being
> significantly inconsistent with the record. First, the
> objective evidence of record weighs heavily against the
> claimant's allegation that his condition significantly
> worsened subsequent to the 2011 hearing in this case.
> Upon discharge from physical therapy treatment on
> February 27, 2009, the claimant reported improvement in
> his ability to perform functional chores at home, such as
> cleaning the garage, lifting furniture, walking without a
> cane, and going up and down stairs with minimal
> discomfort (Ex. B7F, p. 1). The undersigned finds that the
> medical evidence as set forth above, demonstrates no
> significant worsening of the claimant's conditions since
> the prior hearing. The claimant declined surgical
> intervention for his back disorder as recommended by Dr.
> Schell, pending allowance of disability benefits (Exs.
> B6F, p. 1; 9F, p. 3; testimony). Similarly, the claimant did
> not proceed with left knee hardware removal pursuant to
> Dr. McManaman's recommendation in May 2012 (Ex.
> B8F, p. 2; testimony). A claimant's noncompliance with
> prescribed treatment is relevant to the disability
> determination. Unless the claimant simply has no way to
> afford or obtain treatment or remedy a condition, the
> undersigned may consider the claimant's failure to seek

24

treatment for a period of time as a factor to be considered against the claimant (*Helvey v. Astrue*, 2008 U.S. Dist. LEXIS 3346, 125 Soc. Sec. Rep. Service 757 (E.D. Kentucky, January 16, 2008), citing *Hale v. Sec'y of Health and Human Servs*., 816 F2d 1078, 1082 (6th Cir. 1987); and *McKnight v. Sullivan*, 927 F2d 241, 242 (6th Cir. 1990). As a general rule, an impairment that can be remedied by treatment with reasonable effort and safety cannot support a finding of disability (*Dunlap v. Comm'r of Soc. Sec*., 2008 U.S. Dist. LEXIS 39150, 127 Soc. Sec. Rep. Service 896 (W.D. Mich. January 7, 2008, citing *Johnson v. Sec'y of Health and Human Servs*., 794 F2d 1106, 1111 (6th Cir. 1984); 20 CPR 404.1530(a) (in order to get benefits, the claimant must follow the treatment prescribed by the claimant's physician). The claimant has followed a conservative course of treatment for his musculoskeletal conditions; he testified that prescribed analgesic medication is somewhat effective.

(Dkt. 11-2, Pg ID 75).

Curiously, the ALJ's *Drummond* analysis fails to acknowledge that plaintiff's physicians recommended back and knee surgery well after the earlier RFC was formulated, and before the passing of plaintiff's late date insured. Instead, the ALJ focused on the surgery recommendations as a reason to discount plaintiff's credibility because he did not undergo the surgeries. However, it is readily apparent that the two additionally-prescribed surgeries – not previously recommended before the formulation of the first RFC – indicate that plaintiff's conditions have worsened. Thus, this matter must be remanded under Sentence Four so that the ALJ can reconsider plaintiff's RFC in light of the fact that his

conditions have, in fact, worsened.

The undersigned also finds that the ALJ erred when discounting plaintiff's credibility because he did not undergo the two surgeries. The ALJ concluded that plaintiff was non-compliant with treatment recommendations. However, there is no evidence in the record to suggest that plaintiff refused such treatment for any reason other than he could not afford the surgeries and was uninsured. As set forth in SSR 96-7p: "... the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7 also provides examples of explanations which may provide insight into the claimant's credibility, including: "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services." *See Lewis v. Colvin*, 2015 WL 6160195, at *15 (M.D. Tenn. Oct. 20, 2015) (quoting SSR 96-7p). Here, the ALJ points to no evidence that contradicts plaintiff's contention that he did not undergo surgery because he could not afford it and was uninsured. Thus, plaintiff's credibility must be reconsidered on remand.

On a related note, the Social Security Act specifically provides that treatment recommendations that would restore plaintiff's ability to work must be followed unless the claimant has a good reason for failing to do so. 20 C.F.R. § 404.1530.

Here, there was not a determination that the surgeries would have restored plaintiff ability to work, because the ALJ determined that plaintiff could work.  Thus, on remand, if the ALJ determines that plaintiff cannot work, he should then undertake the analysis required by § 404.1530 and SSR 82-59.[2]

2.    Listing 1.04A

Under the theory of presumptive disability, a claimant is eligible for benefits if he has an impairment that meets or medically equals a Listed Impairment.

---

[2] As explained in *Carr v. Colvin*, 2013 WL 1309094, at *23 (M.D. Tenn. Mar. 12, 2013) *report and recommendation adopted*, 2013 WL 1284326 (M.D. Tenn. Mar. 28, 2013), SSR 82-59 sets forth the following conditions that must be met before the SSA may determine that an individual has failed to follow prescribed treatment:

> 1. The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity (SGA) ... and
> 2. The impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; and
> 3. Treatment which is clearly expected to restore capacity to engage in any SGA (or gainful activity, as appropriate) has been prescribed by a treating source; and
> 4. The evidence of record discloses that there has been refusal to follow prescribed treatment.
>
> Where SSA makes a determination of "failure," a determination must also be made as to whether or not failure to follow prescribed treatment is justifiable.

Soc. Sec. Rul. 82-59. Ruling 82-59 explains that, when a plaintiff is not undergoing prescribed treatment, he "should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment. Detailed questioning may be needed to identify and clarify the essential factors of refusal. The record must reflect as clearly and accurately as possible the claimant's ... reason(s) for failing to follow the prescribed treatment." *Id*. Further, Ruling 82-59 lists several non-exhaustive "acceptable justifications for refusing to accept prescribed treatment," one of which is that "[t]he individual is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable." *Id*.

*Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, *6 (E.D. Mich. 2012). The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing. *See Harvey v. Comm'r of Soc. Sec.*, 2014 WL 5465531, at *4 (E.D. Mich. 2014). To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Id.* To satisfy this burden, the claimant must offer medical findings equal to the severity of the requirements, and the findings must be supported by medically acceptable clinical and laboratory techniques. 20 C.F.R. § 404.1526(b).

When considering presumptive disability at Step Three, "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Christephore*, 2012 WL 2274328, at *6 (citing *Reynolds*, 424 Fed. Appx. at 416). An ALJ's failure to sufficiently articulate his Step Three findings is error. *See M.G.*, 861 F. Supp.2d at 858-59; *see also Reynolds*, 424 Fed. Appx. at 416; *Tapp v. Astrue*, 2011 WL 4565790, at *5 (E.D. Ky. 2012) (discussing reversal in a series of cases where the ALJ "made only a blanket statement that the claimant did not meet or equal a Listing section"). For example,

28

in *Andrews v. Commissioner of Social Security*, 2013 WL 2200393 (E.D. Mich. 2013), plaintiff argued that the ALJ erred in failing to consider whether her cervical and lumbar spine impairments meet or medically equal Listing 1.04A for "disorders of the spine." *Id.* at *11. The ALJ there simply stated: "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments[.]" *Id.* The court noted that the ALJ explicitly found that plaintiff suffers from degenerative disc disease and cervical spondylosis, and thus "should have considered and discussed [plaintiff's] impairment(s) relative to Listing 1.04A," and "[h]er failure to do so constitutes legal error." *Id.* at *12.

Here, the ALJ expressly considered whether plaintiff's impairments met Listing 1.04, and determined that they did not. Plaintiff contends that the ALJ's explanation is inadequate. The undersigned concedes that, standing alone, it may be questionable as to whether the ALJ's analysis as stated at Step Three of his decision suffices to support a finding that plaintiff's impairments did not meet Listing 1.04(A). However, it is well-settled that the Court may look at the rest of the ALJ's decision in order to determine whether substantial evidence supports the ALJ's Step Three determination. *See Vance v. Colvin*, 2014 WL 4925069, at *13 (N.D. Ohio Sept. 30, 2014) (citing *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411 (6th Cir. 2006)). Indeed, the ALJ here specifically notes that:

> The narrowing of the left knee joint space with

29

> osteopathic changes, degenerative joint disease both hips,
> and/or status post fracture of left tibia and tibial plateau
> does not meet or medically equal listing 1.02A because
> the claimant is able to ambulate effectively as defined in
> the regulations.
>
> The disc space narrowing of the lumbosacral spine does
> not meet or medically equal listing 1.04 because the
> claimant lacks the requisite motor and sensory deficits
> and there is no evidence of spinal arachnoiditis or lumbar
> spinal stenosis resulting in pseudoclaudication.

(Dkt. 11-2, Pg ID 68).  Moreover, review of the ALJ's decision reveals that the

ALJ discussed all of the medical evidence on which plaintiff relies.  The court will

not overturn an ALJ's decision if the failure to articulate Step Three findings was

harmless.  *See M.G.*, 861 F. Supp.2d at 859.  Such an error is harmless where

"concrete factual and medical evidence is apparent in the record and shows that

even if the ALJ had made the required findings, the ALJ *would have* found the

claimant not disabled...."  *Id.*. at 861 (citation omitted, emphasis in original).  This

is because the Sixth Circuit "has consistently rejected a heightened articulation

standard, noting . . . that the ALJ is under no obligation to spell out 'every

consideration that went into the step three determination' or 'the weight he gave

each factor in his step three analysis,' or to discuss every single impairment."

*Andrews*, 2013 WL 2200393, at *12 (citing *Staggs v. Astrue*, 2011 WL 3444014, at

*3 (M.D. Tenn. Aug. 8, 2011) (citation omitted)).  As the *Staggs* court further

stated, "[n]or is the procedure so legalistic that the requisite explanation and

30

support must be located entirely within the section of the ALJ's decision devoted

specifically to step three; the court in *Bledsoe* implicitly endorsed the practice of

searching the ALJ's entire decision for statements supporting his step three

analysis." *Staggs*, 2011 WL 3444014, at *3 (citing *Bledsoe*, 165 Fed. Appx. at

411).  Thus, remand is not required where the evidence makes clear that even if the

ALJ "had made the required findings, [he] *would have* found the claimant not

disabled." *M.G.*, 861 F.Supp.2d at 861.  Conversely, remand is appropriate in

cases where the court's review of the ALJ's decision and the record evidence

leaves open the possibility that a listing is met.  *See Reynolds*, 424 Fed. Appx. at

416 ("in this case, correction of such an error is not merely a formalistic matter of

procedure, for it is possible that the evidence [the plaintiff] put forth could meet

this listing").

Here, in order for plaintiff to meet the criteria of Listing 1.04A, he must

show that he has a disorder of the spine with:

> Evidence of nerve root compression characterized by
> neuro-anatomic distribution of pain, limitation of motion
> of the spine (atrophy with associated muscle weakness or
> muscle weakness) accompanied by sensory or reflex loss
> and, if there is involvement of the lower back, positive
> straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A.  It is well-settled that to "meet"

a listing, a claimant's impairments must satisfy each and every element of the

listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Blanton v. Soc. Sec. Admin.*, 118 Fed. Appx. 3, 6 (6th Cir. 2004). Plaintiff simply does not discuss what medical evidence establishes the existence of "nerve root compression." Even if plaintiff cannot demonstrate that he meets the criteria of Listing 1.04A, however, he can still satisfy his burden at Step Three by proving that he has an impairment (or combination of impairments) that medically equals this Listing. To do so, he must "present medical evidence that describes how his impairment is equivalent to a listed impairment." *Lusk v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 405, 411 (6th Cir. 2004). This means that plaintiff must present medical findings showing symptoms or diagnoses equal in severity and duration "to *all* the criteria for the one most similar listed impairment." *Daniels v. Comm'r of Soc. Sec.*, 70 Fed. Appx. 868, 874 (6th Cir. 2003). Here, plaintiff merely asserts that the Commissioner has failed to establish that he does not satisfy the listing, without conversely establishing that the records supports such findings. It is plaintiff's burden to prove, not the Commissioner's burden to disprove.

Notwithstanding, given that the medical opinion in the record on equivalence is dated March 26, 2012 (Dkt. 11-2, Pg ID 138-147) - i.e. well before plaintiff's treating physicians recommended two additional surgeries in May 2012 and September 2012 (Dkt. 11-7, Pg ID 433; Dkt. 11-7, Pg ID 486) - the undersigned concludes that an updated opinion on equivalence must be obtained on remand.

While the ALJ reserves the right to decide certain issues, such as a claimant's RFC, 20 C.F.R. § 404.1527(d), courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'") (quoting *Deskin v. Comm'r Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence."). As the *Deskin* court explained:

> An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. Where the "medical findings in the record merely

33

> diagnose [the] claimant's exertional impairments and do
> not relate these diagnoses to specific residual functional
> capabilities such as those set out in 20 C.F.R.
> § 404.1567(a) ... [the Commissioner may not] make the
> connection himself."

*Deskin*, 605 F.Supp.2d at 912 (quoting *Rohrgerg v. Apfel*, 26 F.Supp.2d 303, 311

(D. Mass. 1998) (internal citation omitted).  "Properly understood, *Deskin* sets out

a narrow rule that does not constitute a bright-line test."  *Kizys v. Comm'r of Soc.*

*Sec.*, 2011 WL 5024866 at *2 (N.D. Ohio 2011).  Rather, *Deskin* potentially

applies in only two circumstances: (1) where an ALJ made an RFC determination

based on no medical source opinion; or (2) where an ALJ made an RFC

determination based on an outdated source opinion that did not include

consideration of a critical body of objective medical evidence.  *Id.*  In this case, the

medical opinion regarding equivalence is outdated, based on the two treating

physician opinions, issued subsequently, indicating that plaintiff needed additional

surgeries.  Thus, the undersigned concludes that this matter should also be

remanded so that the ALJ can obtain an updated opinion of a medical advisor the

issue of equivalency and plaintiff's RFC.

> 3.    Sentence Six

Given the foregoing conclusion that this matter should be remanded for

further consideration under Sentence Four, the undersigned need not address

plaintiff's alternative request for remand under Sentence Six.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be remanded for further proceedings under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an

35

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 23, 2016                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

    I certify that on February 23, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                           s/Tammy Hallwood
                                           Tammy Hallwood
                                           Case Manager
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov